**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **C.M.**

**No. 21-0698** (Mercer County 19-JA-126)

## MEMORANDUM DECISION

Petitioner Mother F.F., by counsel Wyclif S. Farquharson, appeals the Circuit Court of Mercer County's August 4, 2021, order terminating her parental, custodial, and guardianship rights to C.M.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Patrick Morrisey and Brittany N. Ryers-Hindbaugh, filed a response in support of the circuit court's order. The guardian ad litem, Elizabeth Davis, filed a response on the child's behalf in support of the circuit court's order. Pre-petition custodian B.F., by counsel Thomas Janutolo, also filed a response in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating her parental, custodial, and guardianship rights rather than imposing a less-restrictive dispositional alternative, such as a post-dispositional improvement period.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In October of 2019, the DHHR filed a child abuse and neglect petition alleging that petitioner's substance abuse negatively affected her ability to care for then three-year-old C.M. The DHHR alleged that petitioner left C.M. in the care of her grandmother, B.F., for one year and petitioner would exercise periodic overnight visitation with C.M. According to the petition,

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

when petitioner visited with C.M. the child would return to B.F.'s home "nasty, dirty, [hungry, and] covered in bug bites." The DHHR further alleged that petitioner was abusing controlled substances, homeless, unemployed, and receiving and utilizing government benefits for the child even though the child was not in her care. Petitioner waived her right to a preliminary hearing.

During the adjudicatory hearing in December of 2019, petitioner stipulated to the allegations that her substance abuse negatively affected her ability to parent C.M. The circuit court accepted petitioner's stipulation and adjudicated her as an abusing parent and C.M. as a neglected child. Thereafter, petitioner moved for and was granted a post-adjudicatory improvement period. Petitioner's case plan required her to participate in supervised visitations with the child, random drug screening, and parenting and adult life skills classes. Petitioner was also required to maintain employment and suitable housing for the child.

In July of 2020, the DHHR amended the child abuse and neglect petition to include the allegation that petitioner's boyfriend, B.W., sexually abused C.M. while the child was in petitioner's care. The DHHR alleged that during the criminal investigation of the child's allegations, law enforcement interviewed petitioner, and petitioner stated several times that she did not believe the allegations. The DHHR further alleged that C.M. told her therapist that petitioner observed the sexual abuse occurring but took no steps to stop B.W. from abusing C.M. during or after the observed abuse. Additionally, during a status hearing, the guardian expressed concern regarding visitation between the parties. During a recent supervised visitation, C.M. disclosed to petitioner that B.W. touched her inappropriately, indicating he had touched her genitalia. According to the visitation supervisor's report, petitioner "jumped on [C.M.] and told her not to say that again because they would put [B.W.] in jail." The report also provided that petitioner "backs [B.W.] one hundred percent." The guardian recommended that visitations be suspended to avoid further harm to the child. The circuit court granted the guardian's motion.

The circuit court held adjudicatory hearings on the amended petition in September of 2020 and December of 2020. The court heard testimony from C.M.'s forensic interviewer; a detective who investigated C.M.'s disclosures; petitioner's service providers; C.M.'s play therapist; petitioner; and B.F. Following the presentation of evidence, the circuit court concluded that, while petitioner did not knowingly allow B.W. to abuse C.M., petitioner had neglected C.M. by failing to recognize that C.M. was being abused by B.W. The circuit court further found the evidence showed that petitioner continued to allow B.W. contact with C.M. even after the child made the allegations. Accordingly, the circuit court adjudicated petitioner as an abusing parent. Petitioner moved for a post-dispositional improvement period. The circuit court noted that C.M.'s play therapist opined that it would not be in the child's best interest to renew a relationship with petitioner.

The circuit court ordered that C.M. undergo a forensic evaluation to determine if the bond between C.M. and petitioner could be repaired, and that evaluation was completed in April of 2021. During the evaluation, C.M. reiterated that B.W. touched her inappropriately and that petitioner walked into the room during the abuse. The evaluator concluded that her statements regarding the abuse appeared to be consistent, age-appropriate, and credible. The evaluator determined that C.M. exhibited clinically significant symptoms of anxiety, including nightmares involving petitioner, and at-risk symptoms of depression, social withdraw, and lack of

adaptability. C.M. was adamant during the evaluation that she wished to live with her "mommy," which the evaluator determined was C.M.'s term for B.F. The evaluator further opined that, due to the significant amount of care that B.F. provided to C.M. prior to and during the proceedings, C.M. was bonded and "securely attached" to B.F., who served as a psychological parent for C.M. The evaluator clarified that any disruption to that attachment "should be viewed in the same manner as a disruption between a child and their parent." The evaluator also concluded that C.M. "does not seem to have an established bond or attachment" to petitioner. Finally, the evaluator provided an "extremely guarded" prognosis for C.M., which was highly contingent on consistent mental health treatment and stability of her permanent placement. The evaluator recommended that C.M. have a structured, stable, and supportive home environment, continue with therapy for six to nine months, and participate in extracurricular activities to foster appropriate social interactions with peers.

The circuit court held the final dispositional hearing in July of 2021. The circuit court noted that it could not find that petitioner "knew about the abuse that was taking place" following the adjudicatory hearings, but it found that petitioner "should have known based upon the evidence[] that she should have been able to recognize that her child was being sexually abused while in her care." The court found that as a result of that abuse, the child suffered emotional harm and was now afraid of petitioner. The circuit court considered that C.M.'s therapist opined it was not in the child's best interest to renew a relationship with petitioner and that the forensic evaluator agreed with the opinion of C.M.'s therapist. Ultimately, the circuit court denied petitioner's motion for a post-dispositional improvement period. The circuit court further found that there was no reasonable likelihood that the conditions of neglect or abuse could be substantially corrected in the near future and that it was necessary for the child's welfare to terminate petitioner's parental, custodial, and guardianship rights to the child. Accordingly, the circuit court terminated petitioner's parental, custodial, and guardianship rights by its August 4, 2021, order. Petitioner now appeals that order.[2]

The Court has previously held

"[a]lthough conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record

---

[2]C.M.'s father's parental rights were also terminated below. According to the parties, the permanency plan for the child is adoption by respondent custodian B.F.

3

viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in terminating her parental, custodial, and guardianship rights based upon an incorrect standard of law. Petitioner emphasizes that the circuit court did not find that she had actual knowledge of the sexual abuse but that she "should have known" that C.M. was subject to sexual abuse while in her care when terminating her parental rights. Petitioner argues this finding is insufficient pursuant to this Court's prior holdings that "termination of parental rights is usually upheld only where the parent takes no action *in the face of knowledge of the abuse* or actually aids or protects the abusing parent." Syl. Pt. 1, *In re Jonathan Michael D.*, 194 W. Va. 20, 459 S.E.2d 131 (1995) (internal citation omitted). We find no error.

Pursuant to West Virginia Code § 49-4-604(c)(6), a circuit court may terminate a parent's parental, custodial, and guardianship rights upon finding that "there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the welfare of the children. West Virginia Code § 49-4-604(d) provides that there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected when "the abusing adult or adults have demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help." Finally, "the controlling standard that governs any dispositional decision remains the best interests of the child." Syl. Pt. 4, in part, *In re B.H.*, 233 W. Va. 57, 754 S.E.2d 743 (2014).

Here, the circuit court's finding that there was no reasonable likelihood that the conditions of neglect and abuse could be substantially corrected in the near future is fully supported by the record. The record demonstrates that the abuse C.M. was subjected to in petitioner's care permanently damaged the relationship between petitioner and the child. The child experienced nightmares due to the abuse, which also caused her to develop a fear of petitioner. The experts agreed that attempting to repair the relationship between C.M. and petitioner would not be in the child's best interests. Petitioner argues that C.M.'s resentment toward her was based primarily on petitioner's disbelief of the child's allegations that B.W. abused her. Petitioner asserts that it appears the child was never informed that petitioner's position had changed, as she now reportedly believes the child. Petitioner speculates that if C.M. had been informed of the change, the relationship could be repaired. However, there is no evidence in the record to suggest such an outcome was likely or that pursuing such an outcome was in the best interest of the child. Further, this Court has held that "[c]ourts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened[.]" *Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, syl. pt. 4. Upon our review, we find that the circuit court's finding that there was no reasonable likelihood that the conditions of neglect or abuse could be substantially corrected in the near future was fully supported by the expert testimony that reunification was not in the child's best interests.

Petitioner also argues that the circuit court erred in terminating her parental, custodial, and guardianship rights without imposing a less-restrictive dispositional alternative, such as a post-dispositional improvement period which petitioner requested below. However, this Court has held that "[b]oth statutory and case law emphasize that a parent charged with abuse and/or neglect is not unconditionally entitled to an improvement period. *Where an improvement period would jeopardize the best interests of the child*, for instance, an improvement period will not be granted." *In re Charity H.*, 215 W. Va. 208, 216, 599 S.E.2d 631, 639 (2004) (emphasis added). As the record established that reunification with petitioner was not in the child's best interest, a post-dispositional improvement period was not warranted in this case. Furthermore,

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Because we find no error with the circuit court's finding that there was no reasonable likelihood that the conditions of neglect and abuse could be substantially corrected in the near future, we also find that the circuit court was within its discretion in terminating petitioner's parental, custodial, and guardianship rights rather than imposing a less-restrictive post-dispositional improvement period.

For the foregoing reasons, we find no error in the decision of the circuit court, and its August 4, 2021, order is hereby affirmed.

Affirmed.

**ISSUED**: March 9, 2022

**CONCURRED IN BY**:

Justice Elizabeth D. Walker
Justice Tim Armstead
Justice William R. Wooton
Justice Alan D. Moats sitting by temporary assignment

**DISSENTING:**
Chief Justice John A. Hutchison

Hutchison, Chief Justice, dissenting:

I dissent to the majority's resolution of this case. I would have set this case for oral argument to thoroughly address the error alleged in this appeal. Having reviewed the parties' briefs and the issues raised therein, I believe a formal opinion of this Court was warranted—not a memorandum decision. Accordingly, I respectfully dissent.